# In the United States Court of Federal Claims

No. 12-845C
(Filed: July 19, 2013)
**TO BE PUBLISHED**

|  |  |  |
|---|---|---|
| DOUGLAS J. SMITH, | ) | Taxability of Military Disability Retired |
|  | ) | Pay; Combat-Related Operations; |
| Plaintiff, | ) | 10 U.S.C. § 1201; 26 U.S.C. § 104(a). |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

Scott W. MacKay, Gaithersburg, Md., for plaintiff.

William J. Grimaldi, Trial Attorney, Steven J. Gillingham, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for defendant. Major Mary E. Meek, U.S. Army Litigation Division, Fort Belvoir, Va., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge

On December 7, 2012, plaintiff, Douglas J. Smith, filed a complaint (docket entry 1) asking that the Court correct his military disability records to state that his disability: (1) was caused by an instrumentality of war in the line of duty during a period of war and (2) was combat-related under 26 U.S.C. § 104(b)(3) because the injury was caused under conditions simulating war or was caused by an instrumentality of war. These determinations would exempt plaintiff's military disability retired pay from taxable gross income, and plaintiff seeks to recover those portions of his disability pay that have been withheld for taxes.

Defendant moved to dismiss plaintiff's complaint on February 7, 2013 pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See* Def.'s Mot. to Dismiss ("MTD") (docket entry 5). Defendant argues that the Court lacks jurisdiction because 10 U.S.C. § 1201, the statute under which plaintiff brings his claim, does not mandate correct federal income tax withholdings. Defendant also argues that the complaint does not state a claim because plaintiff is receiving the correct amount of gross disability pay under § 1201. *See* MTD. Plaintiff filed an opposition to defendant's motion, *see* Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") (docket entry 6, Feb. 21, 2013), and

defendant filed a reply in support of its motion. *See* Def.'s Reply in Supp. of its Mot. to Dismiss ("Reply") (docket entry 9, Mar. 18, 2013).

On April 12, 2013, the Court requested supplemental briefing on defendant's motion (docket entry 10). The Court instructed the parties to address whether § 1201 mandates that plaintiff receive the correct net amount of disability retired pay or whether plaintiff's claim should properly be considered as a tax refund claim. Thereafter, the parties filed supplemental briefs on the motion. *See* Pl.'s Supplemental Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Suppl. Br.") (docket entry 11, Apr. 26, 2013); Def.'s Response to the Court's April 12, 2013 Order Requesting Supplemental Briefing ("Def.'s Suppl. Br.") (docket entry 12, May 10, 2013). Defendant additionally argues that plaintiff seeks a tax refund, but plaintiff has not previously filed the required administrative refund claim. *See* Def.'s Suppl. Br. For the reasons set forth below, the Court **GRANTS** defendant's motion to dismiss pursuant to Rule 12(b)(1).

## I.    Background

### A.    *The Army Physical Disability Evaluation System ("PDES")*

The Secretary of a military department may retire a service member with disability retired pay if the Secretary designates the service member as "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay." 10 U.S.C. § 1201(a). The service member's disability must also be: (1) of a permanent nature and stable; (2) not the result of the service member's intentional misconduct or willful neglect; and (3) subject to a disability rating of at least thirty percent and meet related criteria. 10 U.S.C. § 1201(b).

To determine if a soldier is entitled to disability retired pay under § 1201, the PDES provides a process to evaluate a soldier's disability and fitness for duty. Army Regulation 635-40, ¶¶ 2-10, 4-19(f) (2006). First, a Medical Evaluation Board ("MEB") assesses a soldier's injury "to document a [s]oldier's medical status and duty limitations." *Id.* ¶ 4-10. Second, if the MEB finds a soldier unfit for duty, it refers the soldier to the Physical Evaluation Board ("PEB"). *Id.* The PEB consists of two parts, an informal PEB and a formal PEB. *Id.* ¶¶ 4-20 to -21. The PDES requires an informal PEB prior to a formal PEB to "reduce the overall time required to process a case through the physical disability evaluation system." *Id.* ¶ 4-20(a). The informal PEB quickly determines whether the MEB completed the soldier's case file and whether a soldier is unfit for duty. *Id.* If the soldier disagrees with the informal PEB's findings and recommendations, the soldier may request a formal PEB hearing. *Id.* ¶ 4-21(a). The formal PEB involves a more in-depth evaluation, providing a soldier with the opportunity to obtain an attorney and introduce evidence on the soldier's behalf. *Id.* ¶ 4-21(e).

Third, the PDES consists of case reviews by the United States Army Physical Disability Agency ("USAPDA") when applicable. *Id.* ¶ 2-10(a)(3). Although a soldier may seek relief through other boards such as the Army Physical Disability Appeal Board and the Army Board for Correction of Military Records, the PDES process specifically includes reviews by the USAPDA. *Id.* ¶¶ 2-10 to -13. A soldier may appeal to the USAPDA when the soldier disagrees with a PEB's report by submitting a statement of rebuttal. *Id.* ¶ 4-22(a)(3). The USAPDA assesses the soldier's hearings for completeness and fairness, evaluates the MEB and PEB's

compliance with regulations, and considers whether the MEB and PEB's findings were "just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations." *Id.* ¶ 4-22(b)(1)–(3).

      B.     *Plaintiff's Service and Injury*

In 2007, plaintiff served as a Staff Sergeant (E-6) assigned to the 290th Military Police Company in the Maryland National Guard.  Compl. ¶ 3.  On October 11, 2007, the Army mobilized plaintiff for active duty and ordered plaintiff to attend training prior to deployment to Iraq.  *Id.*  Plaintiff reported to McGregor Range Complex, a part of the Fort Bliss military reservation in New Mexico, to engage in simulations of combat conditions, to prepare for the conditions in Iraq, and to sufficiently develop the skills needed for deployment missions.  *Id.* ¶¶ 4–5.

During pre-deployment training in December 2007, another soldier threw his interceptor body armor into a High Mobility Multi-Wheeled Vehicle while plaintiff was inside.  *Id.* ¶¶ 9, 11.  The interceptor body armor struck the right side of plaintiff's head and plaintiff's right eye, causing plaintiff to lose vision in his right eye.  *Id.* ¶ 12.  Plaintiff also experienced a detached retina in his eye that required him to undergo multiple surgeries.  *Id.* ¶ 13.  The Army referred plaintiff to the MEB, which diagnosed plaintiff with a bilateral retinal detachment.  *Id.*  The MEB also determined plaintiff's condition fell below the Army National Guard's standards for an enlisted soldier, and thus that the condition rendered plaintiff unfit for continued military service.  *Id.*

The MEB then referred plaintiff to the PEB, which found that plaintiff's disability occurred in the line of duty and rendered him physically unfit for duty.  *Id.* ¶¶ 13, 16.  The informal PEB also recommended that the Army permanently retire plaintiff with a disability rating of sixty percent, entitling him to retired pay under § 1201.  *Id.* ¶ 16.  Finally, the informal PEB found:

> 10.A. THE SOLDIER'S RETIREMENT IS NOT BASED ON DISABILITY . . . CAUSED BY AN INSTRUMENTALITY OF WAR AND INCURRING IN LINE OF DUTY DURING PERIOD OF WAR AS DEFINED BY LAW.

> \*     \*     \*

> 10.C. DISABILITY DID NOT RESULT FROM A COMBAT RELATED INJURY AS DEFINED IN 26 U.S.C. 104.

*Id.* As a result of the informal PEB's 10.C. finding, plaintiff's disability pay is taxed. § 104(b)(3).[1]

Plaintiff disagreed with the informal PEB's findings and requested a formal PEB hearing. Compl. ¶ 17. The formal PEB report, however, included the same 10.A. and 10.C. recommended findings as the informal PEB report. *Id.* ¶ 22.

Plaintiff appealed to the USAPDA, which affirmed the formal PEB's findings. *Id.* ¶ 28. On September 20, 2012, the USAPDA released plaintiff from duty with disability retired pay. *Id.* ¶ 31. Following the PEB's 10.C. finding, the Army has withheld a portion of plaintiff's disability retired pay for federal income taxes. Opp'n 5.

In this action, plaintiff seeks to recover the amount of his retired pay that has been withheld for taxes. Plaintiff has not filed an administrative tax refund claim. Pl.'s Suppl. Br. 15.

## II.   Discussion

Plaintiff bears the burden of establishing subject matter jurisdiction. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Plaintiff invokes this Court's jurisdiction pursuant to the Tucker Act, which grants the Court jurisdiction over claims "against the United States founded . . . upon the Constitution, any Act of Congress, or any regulation of an executive department." 28 U.S.C. § 1491(a)(1). The Tucker Act waives sovereign immunity and grants jurisdiction, but it does not create a substantive cause of action. *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1305–06 (Fed. Cir. 2008). Thus, a plaintiff must identify "a separate source of substantive law that creates the right to money damages." *Id.* at 1306 (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)) (internal quotation marks omitted).

10 U.S.C. § 1201 is ordinarily such a money-mandating source of law, as shown in cases where a plaintiff challenges the gross amount of disability pay. *E.g.*, *Fisher*, 402 F.3d at 1174-75; *McHenry v. United States*, 367 F.3d 1370, 1378 (Fed. Cir. 2004); *Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed. Cir. 1991). The parties dispute, however, whether § 1201 mandates payment of the tax withholdings that plaintiff seeks to recover. Because the administrative process for tax refunds preempts Tucker Act jurisdiction, the Court need not decide whether it has jurisdiction to hear plaintiff's claim under the Tucker Act. *See United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008). Pursuant to 26 U.S.C. § 7422(a), "[n]o suit . . . shall be maintained in any court for the recovery of any internal revenue tax alleged to have been

---

[1] Section 104 defines a "combat-related injury" as a "personal injury or sickness-- (A) which is incurred-- (i) as a direct result of armed conflict, (ii) while engaged in extrahazardous service or, (iii) under conditions simulating war; or (B) which is caused by an instrumentality of war." § 104(b)(3). Accordingly, when a military department determines that a service member's disability resulted from a combat-related injury, it does not withhold federal income taxes from the service member's disability retired pay. 7B Department of Defense Financial Management Regulation ¶ 240301.C (2011).

erroneously or illegally assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund . . . has been duly filed."  The Court noted that Congress's use of five "any's" demonstrates intent for § 7422(a) to apply broadly. *Clintwood Elkhorn*, 553 U.S. at 7.

In *Clintwood Elkhorn*, coal companies sought to recover unconstitutionally collected taxes on their coal exports.  *Id.* at 5–6.  Because the tax code has a three-year statute of limitations and the Tucker Act has a six-year statute of limitations, the companies filed IRS refund claims for the three immediately preceding years and asserted claims under the Tucker Act to recover the taxes levied in the three years prior to those claims.  *Id.*  For the claims brought under the Tucker Act, the companies argued that the Export Clause of the Constitution was money mandating and therefore conferred Tucker Act jurisdiction.  *Id.* at 9.  But, rather than determine whether the Export Clause mandated return of improperly collected taxes, the Court ruled that the administrative tax refund process preempted any possible Tucker Act jurisdiction. *See id.* at 4, 9.  The Court found that the companies were required to first file a timely administrative refund claim, even though the Government admitted that the taxes were collected in violation of the Export Clause.  *Id.* at 9.  The Court relied on the broad language in § 7422(a) to show that "Congress meant the statute to have expansive reach," which included claims that could otherwise be characterized as Tucker Act claims.  *Id.* at 7, 9–12.  Thus, the Court held that the lower courts erred when they granted Tucker Act jurisdiction over the claims for the earlier three years of taxes.  *Id.* at 14–15.

Similarly, plaintiff seeks to establish Tucker Act jurisdiction over a claim to recover taxes.  Plaintiff argues that his claim is not a tax refund, but a suit to receive the withheld portions of his disability retired pay.  Under this view, plaintiff argues that he does not need to file an administrative refund claim, but he can bring suit against the government to recover his net retired pay under 10 U.S.C. § 1201.

Although plaintiff seeks taxes related to military pay under § 1201 rather than the Export Clause, these tax withholdings "would nevertheless clearly fall into the broader category of 'any sum . . . in any manner wrongfully collected.'"  *Clintwood Elkhorn*, 553 U.S. at 13 (alteration in original) (quoting 26 U.S.C. § 7422(a)).  Accordingly, following *Clintwood Elkhorn's* lead on suits to recover taxes, this Court first considers whether plaintiff complied with the tax refund scheme.  Because plaintiff has not filed an administrative refund claim with the IRS, he has not met the requirements necessary to bring this claim against the Government.

While plaintiff argues that another court has exercised Tucker Act jurisdiction over a similar claim for federal income taxes withheld from military retired pay, *see Ray v. United States*, 453 F.2d 754, 756 (Ct. Cl. 1972), *Clintwood Elkhorn* has since required all taxpayers seeking to recover any tax payments to first file an administrative refund claim.  Moreover, *Ray* relied on language in 10 U.S.C. § 1552 mandating payment of "pecuniary benefits," which, the court determined, included sums wrongly withheld.  *Id.* at 758 (describing the plaintiff's claim as "not a claim for refund of taxes paid, but for 'pecuniary benefits' wrongfully denied").  Section 1201, however, does not contain any such language or any other reference to taxes or tax withholdings.

**CONCLUSION**

Because the Court does not have jurisdiction over plaintiff's military disability pay claim based on 10 U.S.C. § 1201, the Court need not consider defendant's RCFC 12(b)(6) motion. The Court **GRANTS** defendant's motion to dismiss based upon RCFC 12(b)(1) for lack of subject matter jurisdiction and orders that plaintiff's complaint be dismissed without prejudice.

**IT IS SO ORDERED.**

 s/ George W. Miller
GEORGE W. MILLER
Judge